Mr. Regatt, am I pronouncing that correctly? Very close, Judge Regatt. Again, my name is Raymond Regatt on behalf of Mr. Darden, and if I may, Your Honor, I'd like to reserve two minutes for potential rebuttal. Granted. You know, in thinking about this case, I think simply stated, the real error here is that the district court below limited its consideration of equitable tolling to a bright line test. And so while it did recognize that Holland had come out recently, it still applied a hard and fast test, which was attorney misbehavior. And unfortunately, that's not the test. Holland is giving the district courts, giving the district courts for inequity, for purposes of determining when there are extraordinary circumstances. And that's really what's underlying this case, is this operative date of August 27, 2000. The situation is extraordinary. This is a situation where the trial, the state trial court, the Court of Common Pleas, recognized that it wasn't happy with the sentencing that it issued on March 23, 2000. Never formally ruled on the motion for reconsideration of sentence until nearly a year later. But the fact that it, not in compliance with the state rules of practice, vacated the sentence, that triggered a 30-day time frame in which to come back to that one event. Compounded with that is the attorney error in that the trial lawyer didn't catch it. And so the trial lawyer never noticed the appeal in a timely fashion. And so every court that has looked at the issues presented by Mr. Darden since has literally had its hands tied because under Pennsylvania law, if you don't have the notice of appeal within that 30-day window, unless the court exercises its own limited equity jurisprudence, you're done. And ironically for Darden, he has the same attorney virtually for the next 11 plus months. So the only other state remedy open to him would have been perhaps to file a PCRA petition in Pennsylvania and say that my lawyer made an honest mistake. It is ineffective assistance of counsel because I have a statutory right to a direct appeal. I want that appeal, or at least to create a record where it's clear he wants that appeal. But he can't even fix the ineffective assistance of counsel there because he has the same lawyer for most of that one-year period. So it really is this interesting mind tease. And as I was reading the papers, when you first get these cases, they're interesting. I'm reminded there's this wonderful show on Food Network, I don't know if you've seen Chopped, and they give the contestants their surprise basket. Okay, chefs, open your basket and here's the surprise. And when you get the paperwork in this case, it really is that. It's you're going through and you're trying to piece this together and what's really going on. I thought it was more Kafkaesque than Food Network. Yeah, there you go. I think that's right. I mean, this was really a series of mistakes. But let's assume for a minute that the state court was dead wrong even in procedurally defaulting your client. I'm homing in on the date of October 27, 2003, which is the date the Pennsylvania Superior Court quashed his appeal as untimely. I'm just going to be candid with you as to how I see it and I'm going to give you the opportunity to show me the error of my ways. As I see it, after October 27, 2003, he should have filed a protective federal habeas petition and asked the federal court to stay and obey while he pursued his state court remedies, trying to persuade the state court of what we're stipulating for purposes of this discussion was the error of the state court ways. And his failure to do that makes it awfully, awfully difficult for him to tell us that he was reasonably diligent when six more years go by before he goes into federal court. Well, I would have to respectfully disagree. In my sister's brief, she references case law from district courts in this circuit. Now, they're not published decisions, but they do make the point that you can file a protective federal habeas. But since briefing, since I submitted my initial brief, this court came down with Pabon v. Mahoney. I hope I'm pronouncing it right. What's the citation, please? 654 Federal 3rd 385. 654 385? Yes. It's in sister counsel's brief. Okay. And there, because I think we're getting to the reasonable diligence prong of the test. And there, again, it's the diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence. And again, in Pabon, on remand, the district court was told to ask, did the petitioner act as diligently as reasonably could have been expected under the circumstances? And that begs the question of, while it may not have been the only path open to Darden, his actions certainly were not an unreasonable path. Tell me if I'm wrong here on some dates. On November 13, 2007, the Common Pleas Court had held that his PCRA petition was timely in this case. Is that right? Initially it said no. And then the court, the trial court, or the PCRA court, reversed itself and said- On November 13, 2007, I think. I think that's probably the correct, right. But then on March 28, 2008, the next year, so at that point, he thought, okay, I'm now on a PCAR court. It's going to get decided by the state courts. He had every reason to believe that because the judge said so in his case. Yes. Then on March 28 of next year, the Supreme Court in Brown overruled the cases on which the court had relied. Right. It didn't reverse his particular case. No. It simply reversed the precedence. Right. Then on November 25th of the same year, from March to November, the case was pending on that day, the Superior Court reversed the order saying he was timely. Right. And then he filed his, and later on the Supreme Court denied Alec Gibbett the tort. And he filed his petition on July 22nd. So there was a period from November 25th, 2008, until July 22nd, 2009, in which his case was out completely in the state court, and then he didn't do anything. So in measuring those months, but of course he did seek out the tort, and that delayed it for quite a, then about two months after the Supreme Court said no, he then filed. Is that right? I believe so. And I think really the point that that illustrates is, and maybe for lack of a more sophisticated test, or to articulate a more sophisticated test, he's not gaming the system. And I really think EDPA, you know, these limitations on federal habeas, which really is supposed to be this tool that courts have to correct injustice as they see it, is looking for that. Are we dealing with a petitioner who's playing a game? Well, you know, I couldn't help but believe that I, in my entire career, over 38 years on the bench and years before that, never saw a more screwed up situation from the word go, when the original attorney didn't file a notice of appeal, said he would. It just went from one thing to another. And I think that then goes to maybe the point that was raised in Holland. And you know, really the significance... But still, no matter how screwed up it was, he had to be reasonably diligent from the point that the Superior Court threw him out, even though he had a petition pending. And if you measure it from that time, was he, is that what he should do? I think, and I think I confused the issue in my brief, because I'm not really looking at this from the perspective so much, although I do say it, that, you know, there should be statutory tolling. But really what's going on, I think, is you should, if we're saying, okay, let's say we could equitably toll here. When do we begin the one year? Right? And I think that's really what it comes down to. I would pick the date that he gets notice of the Alcott decision saying, you're out of state court now forever. The problem with that is you're opening the door for a petitioner to spend years and years and years, sometimes as many as 8 or 10 years in a state court system, trying to convince the state system of the timeliness, and then to walk into a federal court in year 8 or year 9 or year 10. And that is directly in contravention to the stay and obey procedure that the Supreme Court has required. When I, as a petitioner, am told that I'm out of court in a state, procedural default in a state court, my duty is to get my federal court system that the state courts are wrong, and I fail, I'm out of luck. I've got to protect myself on the federal side while I continue to pursue appeal upon appeal within the state direct appeal system and or the post-conviction system. He's not going to know that, and I understand that that may be his tough law. I mean, you need to be a law professor to know that. That's the frustrating thing, right? Yes, and I think... But isn't it the law, though? I mean, how do we get around that law? That's what I'm challenging you with. We go back to the Izzy Gaming, the system test. Is this somebody who's now filed 50 state habeas petitions? You know, in my home state in Connecticut, we don't have a PCRA. You could file state habeas after state habeas after state habeas, ineffective assistance of habeas counsel. You know, it goes on and on. And yes, that point you're making is right on Reince v. Weaver. He was really out of court until the Supreme Court in Brown overruled the cases that the Common Pleas Court relied on. When did he really get out of court in Pennsylvania? Because if the Supreme Court hadn't come down with Brown, then his PCAR petition would have been heard. Right, right. That was my impression. I don't know. I guess, you know, one answer might be that your guess there is as good as mine. I mean, I think that that's a reasonable observation. I think that's why I err on the side of fairness to Harold Darden, which is, let's use the date when he's told finally, you know, conclusively by the Pennsylvania court system, by its highest court, look, you're done. You know, your PCRA petition... Can you cite a case to support that? I can't. That's the problem, other than Holland. Because I think Holland's significance isn't so much this test that it's talking about, you know, this two-prong, okay, show number one, you know, that you've been acting diligently and then extraordinary circumstances. I think what really is significant with Holland is it's going back to this idea that habeas here is to correct these kinds of screwed-up situations, which is, you know, we want to put time limits, certainly, so people, again, can't game the system. But we want to give you, you know, the sword of Alexander. You can cut the Gordian knot when you have to. And all the time that we spent in this case dealing with this in federal court, you know, we could have already dealt with the direct appeal in state court. And that's the irony. But, no, Judge Hardiman, I can't give you a precedential case that stands for the proposition that what you're asking for, because it's just not there yet. All right, we'll hear you on rebuttal. Thank you. Ms. Palmer? Good morning. May it please the Court, Ann Palmer for the Appellees, also known as Respondents, and maybe more simply, just the Commonwealth. I think your honors have focused on the central issue here, which is the diligence problem. Although the case appears complicated because of the concatenation that you've discussed of the early procedural history in state court, the dispositive history is much simpler. And so, just to focus on the bottom line, is that the appellant pursued state collateral remedies exclusively without filing a protective petition. And despite being put on notice repeatedly as of the October 2003 quashal of his appeal, and then repeatedly thereafter, the dismissal of his petition is untimely in March of 2007. Well, in 03, he's told he's out of court, but then he's later told he's in court. He's in and he's out. He's out and he's in. It's sort of this terrible mixed messages he's getting from the state court system, isn't it? The trial court opinions are what they are. But the state intermediate appellate court is the dispositive voice, and for habeas purposes especially, is the sole arbiter of the timeliness. All right, but why don't you address Judge Greenberg's concern, which I share, which is he doesn't finally know that he's out until 08. So why shouldn't that be the date where we begin the diligence clock running, rather than the first time he's told he's out of court, October 27, 2003? Well, but he was told very clearly by the superior court in October of 2003 what the operative deadlines were. And he was put on notice of the great risk of assuming that the state courts – I don't know how clear it was. The court never said why. Well, state courts – The courts did say he was out of – he quashed the appeal, but it didn't tell him why. Well, the opinion was abbreviated. That's true. But I think reading it, it appears clearly to adopt a commonwealth's analysis that – If he had a lawyer then, he would have filed a protective petition. But the sad reality is he went pro se, right? And he did probably what 98% of pro se litigants would do, and you just try to convince – you take the next step in the state system, right? Well, he – It's a harsh – it's very harsh, isn't it, the rule that would require that he have filed a protective petition? Well, he did have PCRA counsel and jurisdiction – Weren't those pro se after the October 27 order? You're correct. He – I mean, he did – he was appointed counsel, though, and counsel reviewed the deadlines. Mr. Biley, I believe, was ultimately appointed PCRA counsel who remained with him through the dismissal. But even at that time, if you – I mean, you could – there are so many extensions that you could give, but he still remains untimely, even up to the Superior Court decision in November of 2008. And as Your Honors have pointed out, to assume that a discretionary appeal will be granted on a PCRA appeal is, yet again, a very dangerous assumption to make. And although Mr. Darden was pro se at various junctures, there's no question that the Pennsylvania Superior Court, unless you can make a powerful case to the Pennsylvania Supreme Court to grant discretionary review, is the arbiter of the jurisdictional deadlines in operation. And though they may be harsh, and in this case, you know, reading the record, it's concerning. As I understand this case, all we could do, if we were reversed, is say, okay, you can file a timely habeas petition. Now it really gets complicated, because now there's questions as to what he exhausted and all these things. Then it goes on for another decade. Yeah, it is complicated because of the default and the lack of jurisdiction in state court at this point, according to the state court opinions, to entertain the appeal. But, again, he needs to get beyond that very formidable hurdle of establishing his diligence to establish timeliness. And it's tempting to grant him, certainly in the early stages, it's not a bad argument for perhaps some equitable consideration, but it strains what is permissible under the controlling precedent for this court to grant him so many years of waiting  when the state courts had said very unequivocally that they did not have jurisdiction to entertain his PCRA petition after. Well, but a common pleas decision is only that. It's not the superior court. And I think in focusing at the outset on the October 2003 superior court opinion, that's where it gets very difficult for Mr. Darden to establish diligence thereafter. And let's not forget that the Commonwealth in December of 2002 also put him on notice of the jurisdictional problem if he had not been aware of it. And how did you do that? The Commonwealth's brief on direct appeal focused exclusively on the jurisdictional issue. And so he was aware even then that he should be questioning whether the state courts had the power to entertain his appeal. So why isn't hope resuscitated in 2007, although it's obviously finally dashed in, what is that, November of 2008? That would seem to get him home. Well, you mean in the- Well, the court of common pleas is October of 2007. He's finally, the PCRA's dismissed in November of 2008. I know that you've focused on the 2003, but in the intervening time his hope has essentially resuscitated in November of 2007. Well- Final dismissal in 2008. Well, it's unfortunately the superior court decision in 2000, sorry, November of 2008 is reiterating what the PCRA court said in its order, which is the dispositive document here in March of 2007 that the PCRA petition was untimely and that he wasn't able to satisfy any exceptions. And from a statutory polling standpoint, which Mr. Darden does mention in his papers, unfortunately there too there isn't relief because under section 244D2 it's clear and under pace as well that a petition deemed untimely by the state courts, again as sole arbiters of the applicable procedural rules, cannot operate to toll the deadline. And we also reviewed in our papers that unfortunately too advancing the deadline due to governmental interference under subsection capital B of D1 of 2244 of the habeas statute isn't available to him either. So, but again, he was very single-minded in his focus on state court remedies and he was alerted at multiple junctures that this would be an uphill battle at best. And Mr. Darden- What Supreme Court cases tell us that you need to pursue federal court remedies? That if you put all your eggs in the state court basket that you run the risk of being untimely in the federal court? Well, PACE confirmed that. RINES made clear that that was available. And Third Circuit decisions prior to RINES too. I believe Morris, we could address that in subsequent additional- But PACE is your best- Well, it makes very clear. In applying Pennsylvania law and in a comparable situation, that you can't say, well, I was trying to exhaust, and that excuses compliance with the timeliness requirements. And actually- That's the logical flaw in the brief is that Darden claims he had to exhaust and he was just doing what he had to do. And the Supreme Court has told us that you can go ahead and try to exhaust all you want, but you've got to file a protective federal habeas petition and move for stay and obey. Yeah, I mean, it's unfortunate in that any deadline is going to be harsh in operation in many cases, unfortunately, because if it weren't, as Your Honor says, if PACE had accepted the fairness argument made in PACE by Mr. PACE, I guess, that there would be really no- the deadline would have no meaning because every petitioner would say, well, I'm trying to exhaust- The legal standard isn't, is this a baritrous litigant gaming the system or is this a well-intentioned litigant who's doing the best he can? Those are two points that I just wanted to respond. I mean, sure it was Kafkaesque at the beginning in many respects, as Your Honor said, but it's really not, as Your Honor said, the standard isn't, is he trying to game the system because for deadlines to have meaning, it's not sort of the inverse of the Schluter standard where requiring to get equitable- suggesting that you really had to get malfeasance by an attorney to rise to equitable tolling, which Holland explained was not the case, but it's still an onerous standard, as Holland reaffirmed very explicitly. And it certainly isn't an inverse standard, as Your Honor says, that only ill-intentioned petitioners are bound by the standards for extraordinary circumstances and exhaustion. The Pabon case is very distinguishable. I mean, among other things, I just point out that the Commonwealth has served in that case and the Supreme Court has asked for a response from Mr. Pabon indicating an interest. But taking Pabon on its face, that was a case where the litigant alleged no ability to speak English and no ability to get help, even filing papers. And although the opinion found multiple instances of diligence, in that case, in his efforts to secure assistance, which Mr. Darden did have, was appointed PCRA counsel, at least, here you have, instead, multiple instances of non-diligence, starting back, I would say, as early as December of 2002, but at least October of 2003, and then the multiple junctures thereafter when you have counsel's letter explaining the likely denial of aliquotter. That was in November. No, this was direct appeal counsel's letter explaining to Mr. Darden that we don't get these things granted very often. And apparently he didn't disagree with the analysis. I mean, we can't assume that the reason people didn't pursue this or adopt his analysis is because it's flawed. Instead, we're required, especially at the federal habeas stage, to assume that the state court application of state law was, in fact, correct, by the superior court, at least. So he was again notified in 2003, December of 2006, when the Finley letter was filed, then again in December of 2006 with the Rule 907 notice issued by the PCRA court, then in March 2007 again by the dismissal on timeliness grounds, and then in November of 2008, the superior court's 2008 decision. So, unfortunately, there is a Supreme Court authority allowing a finding of diligence in this case, regrettably or no, and also Pabon, even Third Circuit, none of the applicable Third Circuit decisions permitted either. So unless the court has any additional questions. Thank you very much. Thank you, Ms. Palmer. Mr. Regatt on rebuttal. Thank you, Your Honor. Again, I think it does come back again towards this idea of, you know, what is the difference between reasonable diligence and maximum feasible diligence and what is reasonable diligence? And, again, the idea of filing a protective federal habeas, that's one option perhaps, although in Ryan's, if I'm not mistaken, it was they were dealing there with unexhausted, like mixed claims, and this is a little bit different. Just to share an observation at the same time, Ryan's is. This is worse, though, because if I'm representing somebody and we have mixed, we have a partially exhausted and partially unexhausted, as counsel, I'm putting this catch-22, right? Because I feel the compulsion to get my exhausted state claims into federal court, yet I don't want to prejudice my ability to continue to pursue my unexhausted state claims. So I file the protective federal, we stay on the federal, and we pursue in state. Here, we don't have any exhausted state claims. No, right. It's totally unexhausted. Right. So all the more reason why, you know, if I guess my challenge to you remains, when a state court tells me that I'm out of court for timeliness grounds, there's a real chance that that might stick. So I've got to get myself to federal court to try to convince the federal court that the state court is wrong. And if I continue to pursue state court rights, I'm putting myself at risk of being time-barred in the federal court, am I not? I think that there's a definite risk of that, but at the same time, I think we have to examine it from the perspective that, look, you know, if you go in and you haven't exhausted your state law remedy or it made at least one try at exhausting it, the federal court is just going to dismiss your federal habeas petition. I mean, perhaps they'll dismiss it without prejudice. But, you know, we're still in the same box. And, again, that's why I think that what you're suggesting is the better praxis. But unfortunately for many of these applicants, they're just unlawyered. They don't know. Why don't you address that for a minute? Because counsel, as Ms. Palmer did point out, he did get a lawyer back in – by 2006, he was lawyered up. So can we really – could we really write an opinion saying, well, you know, we're going to make an exception here because he was pro se or, I mean – Well, I guess – By 2006, he's got lawyers writing Finley letters, when lawyers should have been running into federal courts saying, you know, we're being diligent. We're doing the best we can here. I just – my client was uncounseled. He was pro se. Now we've got a lawyer. But then he's in the other – now he's – now it's even stronger in his argument that he's being diligent. I'm relying on the advice of the attorney that the state's given me. So I mean – And then he's just left with a good ineffectiveness argument, isn't he? Yeah, perhaps. I mean, he's bound by – I mean, this is the conundrum. I mean, this really is the trap he's in. And, again, I think that perhaps the precedent this Court can rely on is to take Holland perhaps to its next logical step, which is to say that, look, you know, we're not going to – we're not going to make this necessarily easy all the time, but in those rare cases where this thing is so screwed up – I mean, he's only asking for a direct appeal. If you win and we say you can file a habeas, what are you now? Now you're looking at all the errors of the trial and everything, except you're going to have to get past exhaustion and all that. Yeah, I – but I do think that the direct appeal, reinstating his direct appellate right, that's real. That is a solid claim. That is not a, you know, I'm going to shotgun every conceivable argument I can raise. I mean, he did not get a right to a direct appeal. I'm confused by that. You want us to say he had a direct appeal right under Pennsylvania law? No, what I'm saying is he had a right to effective counsel. And while I don't think the lawyer here was necessarily intention – I mean, I – you know, I hate to say, ah, you know, ineffective on brother counsel, but this is a situation where, unfortunately, he should have known that the 720B was going to create a problem and should have noticed the appeal. What you would ask a habeas court to do is to say that he had ineffective assistance of counsel and that his remedy should be a direct appeal from the original conviction going all the way back. Yes. And that's what you're all looking to see here. Well, I think that that is certainly a claim that is a viable and should be a successful claim if he can create – Then, of course, you may lose on the direct appeal if you get it or you may not. Right. Yes. That part I can't – It looked like on the facts to the extent we had him, he had a tough case. I'm now talking about guilt. Right, right. Because the way the arrest was made and everything, you know, it looked like a tough case. I understand, but that part I didn't – I'm not digging that deeply back on. I'm more concerned about – You'll take a tough case over no case, right? There you go. I take a tough case over no case. But there is something to be said that we have to jealously protect people's right to direct appeal when it's statutorily provided. Tough case or not. Tough case or not. Yeah. No, I'm good. Mr. Regan, are you appointed counsel in this case? Yes, sir. Or CJA? Thank you for your service. Appreciate it. Thank you. Ms. Palmer, thank you for your argument. The court will take the matter under advisement.